438 So.2d 10 (1983)
Jonathon Barclay SMITH and Thomas Wagner, Appellants,
v.
STATE of Florida, Appellee.
Nos. 81-478, 81-618.
District Court of Appeal of Florida, Second District.
May 25, 1983.
Rehearing Denied September 23, 1983.
*11 Joseph P. McNulty of McNulty, Moritz, Pecarek & Dickey, Largo, for appellant Smith.
John D. Fernandez, Clearwater, for appellant Wagner.
Jim Smith, Atty. Gen., Tallahassee and Peggy A. Quince, Asst. Atty. Gen., Tampa, for appellee.
RYDER, Judge.
Smith and Wagner appeal from their convictions for possession of over 100 pounds of marijuana, alleging that the trial court erred in denying suppression of evidence.
The state charged appellants and others by information with possession of marijuana in excess of 100 pounds while carrying firearms. Appellants asserted numerous grounds in moving to suppress evidence which had been obtained with information gathered through the interception of wire communications. The grounds included allegations of deficiencies in the applications for orders authorizing three telephone wire *12 intercepts. The asserted deficiencies were: lack of probable cause; staleness of the information in the applications; reliability of informants; applications for certain of the orders by persons not authorized by section 934.07, Florida Statutes (1975), and federal statutes; and failure to pursue investigative avenues other than wiretaps.
The lower court granted suppression of all information taken from the wiretaps, and the subsequent arrests and seizures, finding written and oral misrepresentations in the applications, confusion over exhibits to the applications, and staleness of the incriminating facts. This court held those findings unsupported and reversed the suppression order in State v. Brainard, 376 So.2d 864 (Fla. 1st DCA 1979).
After remand, appellants asserted their motion to suppress on the remaining grounds including that the applications for two of the three wiretaps were signed by an assistant rather than the state attorney. The lower court held a hearing to consider if the information gained, which led to the arrests of appellants and the subsequent seizure of contraband, was independent of the wiretaps. Two U.S. Customs Officers testified at the hearing.
Agent Murphy testified that surveillance of the various codefendants began after the first wiretap went into effect. The aircraft which brought marijuana into Pinellas County was identified through surveillance conducted at the St. Petersburg-Clearwater Airport and was connected to codefendant Brizzi. Brizzi was already known to law enforcement officers and was observed in the vicinity of the airplane. Appellant Smith and Brizzi were observed making tests on the aircraft with oxygen bottles and a bladder tank. Murphy testified that his experience indicated oxygen was not normally used on local flights unless experiments with oxygen were being conducted. Also, the installation of a bladder tank was usually for a long-range flight. The officers thus concluded that the aircraft was being prepared for a high altitude and extended flight.
The aircraft was subsequently seen departing the airport and was tracked by radar until lost in the vicinity of Bimini in the Bahamas. The officers had no knowledge from any source as to when and from where the plane would return. Later, the officers received information from the wiretap of a morning meeting between appellant Wagner and one Sauls which was to be held at a particular restaurant on U.S. Highway 19. The authorities placed the two subjects under surveillance, but both were lost soon after they left the restaurant. The officers then set up an extensive ground and air surveillance of the greater part of northern Pinellas County. Later that afternoon, officers in a sheriff's department aircraft observed and identified the aircraft in question. Police were dispatched to the area where the plane was seen landing, and the deputies in the sheriff's aircraft radioed information that bales were being removed from the plane to a van-type motor vehicle. Agent Murphy also observed the unloading from State Road 77.
Murphy testified that Wagner was arrested in the white van which had been at the unloading site. After Wagner exited the vehicle, Murphy observed a loaded .32 caliber firearm in the immediate area where Wagner had been seated (behind the driver's seat, the firearm being within the reach of any person seated there).
Customs Officer Maeder testified he was informed by radio, after the unloading, that the subject aircraft was then flying in the direction of the St. Petersburg-Clearwater Airport. The aircraft landed at that airdrome. Maeder observed Smith exit the plane, carrying several small packages, and proceed to an automobile. As soon as Smith entered the vehicle, Maeder approached, identified himself, removed Smith from the vehicle, and "patted him down for weapons." A .357 magnum pistol was found lodged in Smith's pants. Maeder testified that Smith had no opportunity to have taken the gun from the car because he was approached as soon as he entered the vehicle.
*13 After the hearing on the motion to suppress, the trial court found a sufficient basis for the arrests independent of and attenuated from the wiretaps. The court denied and dismissed the remaining issues of the motion to suppress, and found the holdings dispositive of the case. Appellants entered pleas of nolo contendere to the charge. It was noted that appellants had preserved for appeal the denial of the motion to suppress, including those issues on the motion which had been stricken from the earlier interlocutory appeal, and the court's ruling that the state could include the carrying of firearms enhancement for the offense charged.
The record reflects that the information which was instrumental in placing the law enforcement officers into a position to make arrests came from the first wiretap rather than the last two wiretaps. This information, together with the knowledge acquired through normal investigative procedures, rendered the information obtained from the second and third wiretaps superfluous. It follows that any taint which may have occurred by reason of the possible illegality of wiretaps two and three has been attenuated. See United States v. Brookins, 614 F.2d 1037 (5th Cir.1980). Hence, we need not address further the validity of the second and third wiretaps.
Of significant concern, however, is the question of the validity of wiretap one. The information leading to the arrests of appellants was obtained from wiretap one and through other investigative procedures. These other procedures were initiated principally because of knowledge gained from the first wiretap. Exploitation of the wiretap information, not independent lawful investigation or fortuitous discovery, led to the evidence obtained. See Shayne v. State, 384 So.2d 711 (Fla. 3d DCA 1980); State v. Maier, 378 So.2d 1288 (Fla. 3d DCA 1979). We are thus unable to find support for the trial court's finding that the arrests and seizures were attenuated from and independent of the first wiretap. Therefore, if this wiretap was invalid, the arrests were improper. See Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
Although the trial court incorrectly determined that the information leading to the arrests of appellants was attenuated from wiretap one, the court nevertheless properly denied appellants' motion to suppress. Appellants have made several arguments, none of which leads us to a finding of reversible error.
We have considered and rejected certain arguments of appellants as to the insufficiency of the affidavit of application for wiretap one in State v. Brainard, supra.
Appellants' contention that the police failed to pursue other investigative practices is refuted by the application affidavit for wiretap one. The showing that normal investigative techniques have failed or are unlikely to succeed, required by section 934.09(1)(c), Florida Statutes (1975), is made if wiretapping appears to be the most reasonable investigative technique under the circumstances to secure other and conclusive evidence of criminal involvement. Zuppardi v. State, 367 So.2d 601 (Fla. 1978); State v. Barnett, 354 So.2d 422 (Fla. 2d DCA 1978). Appellants' further arguments challenging the sufficiency of the affidavit are without merit. See State v. Daniels, 389 So.2d 631 (Fla. 1980); Hudson v. State, 368 So.2d 899 (Fla. 3d DCA), cert. denied, 378 So.2d 345 (Fla. 1979).
The assertion by appellants that suppression was required due to defects in the reporting process concerning the progress and continued need for wire interceptions is without merit. There has been no clear demonstration that the information received from wiretaps one, two and three was improperly commingled in reports to the circuit judge who authorized the interceptions. See United States v. Giordano, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974).
Appellants' argument that remand is necessary for a hearing by the trial court concerning the issue of nonminimization of the interception of communications, section 934.09(5), Florida Statutes (1975), *14 must also fail. The trial court, after finding attenuation, denied and dismissed the remaining issues of the motion to suppress. It is clear that the issue of nonminimization is properly before this court. We find that appellants have not substantiated their contentions of nonminimization.
Appellants have maintained that if this court finds the trial court's attenuation order to be incorrect, then the nolo contendere pleas are without foundation and appellants have not waived their rights to proceed on the motion to suppress or to a jury trial. This is incorrect. It was noted by the trial court and counsel below for each of the appellants that the issues preserved for appeal, in addition to the order finding attenuation, included those issues from the prior appeal which had been cross-assigned as error but were stricken by this court. Furthermore, the trial court's denial and dismissal of other issues presented in the motion to suppress were preserved for this appeal. Hence, while we disagree with the finding of attenuation as to wiretap one, we agree with the denial of the motion to suppress. Wiretap one was valid. Therefore, in affirming the result below, that is, the denial of the motion to suppress, appellants' nolo contendere pleas remain effective. See Brown v. State, 376 So.2d 382 (Fla. 1979); McNamara v. State, 357 So.2d 410 (Fla. 1978).
Appellants' final argument concerns the propriety of enhancement of their sentences from third degree felonies to second degree felonies pursuant to section 775.087(1), Florida Statutes (Supp. 1976). The evidence indicates that appellant Smith, at the time of his arrest, had a .357 pistol in his trousers. Appellant Wagner was in a van which contained bales of marijuana. He was behind the driver's seat. After ordering Wagner and others out of the van, a customs agent saw a .32 caliber pistol in the immediate area where Wagner had been while inside the van. The weapon was within Wagner's immediate grasp. The evidence supports the finding that each appellant carried a firearm while in the act of possessing marijuana. Enhancement of the sentence of each appellant pursuant to section 775.087(1) was thus proper.
The convictions and sentences are therefore AFFIRMED.
BOARDMAN, A.C.J., and GRIMES, J., concur.