462 So.2d 62 (1984)
Michael Lawrence KRESBACH, Appellant,
v.
STATE of Florida, Appellee.
No. AX-15.
District Court of Appeal of Florida, First District.
December 28, 1984.
Rehearing Denied January 31, 1985.
*63 William L. Camper, Brown & Camper, Tallahassee, for appellant.
Jim Smith, Atty. Gen. and Thomas H. Bateman, III, Asst. Atty. Gen., Tallahassee, for appellee.
ERVIN, Chief Judge.
Kresbach appeals from a conviction and sentence for trafficking in cocaine in excess of 28 grams. He contends that the trial court erred in denying the motion for judgment of acquittal. We reverse.
On December 6, 1982, a Federal Express courier found an envelope that had broken open inside a Federal Express dropbox. The envelope was a Federal Express shipping envelope, with an attached air bill or receipt. While placing the shipping envelope's contents  a manila envelope  into a larger shipping envelope, the courier noticed that the air bill was marked "divorce proceedings", but that the manila envelope felt "mushy" and unlike paperwork. The courier opened the manila envelope and found two clear plastic bags.[1] One bag contained a white powdery substance, later identified as 81.6 grams of cocaine.
The Leon County Sheriff's Office investigated the return address listed on the Federal Express air bill, but found no business or structure at that address. The manila envelope had a 1982 postmark and a return address of a Tallahassee business. The sheriff's office found only a vacant apartment at that address. The shipping address on the Federal Express envelope's air bill listed Thorne Caldwell of Jackson, Mississippi as the addressee. The sheriff's office made a duplicate Federal Express package, substituted flour for the original powdery substance, and shipped it to Caldwell.
Later, during Kresbach's trial, Caldwell testified that he was not familiar with the other names and addresses listed on the original Federal Express envelope and the manila envelope. He admitted that he had expected delivery of the package, talked by telephone to appellant more than once in late November and December of 1982, and given appellant checks for $700 in September 1982, and for $3,700 in October 1982. Caldwell stated that the two checks were loan repayments to appellant.
Douglas Barrow, a fingerprint identification specialist with the Florida Department of Law Enforcement, examined the Federal Express envelope and its attached bill, the manila envelope and the two clear plastic bags. On the manila envelope, Barrow developed four latent fingerprints, and one other print which could be either that of a *64 finger or palm. Barrow matched one of the fingerprints on the manila envelope with the left thumb print of appellant. The identity of the four other prints on the manila envelope is unknown, except that they were not the prints of the Federal Express courier, any law enforcement personnel, or another Federal Express employee present at the scene of discovery. On the Federal Express envelope, Barrow developed one latent fingerprint, but could not identify it. No prints were found on the Federal Express air bill. Barrow found twelve fingerprints on the two plastic bags and identified three; one each belonging to a police investigator, the Federal Express courier and his fellow Federal Express employee. Barrow testified that he could not tell when any of the developed prints had been placed on any of the items. In his opinion, how long a print remains on an object depends on the amount of moisture or perspiration on the particular finger, whether the finger was oily, the nature of the surface and the atmospheric conditions of the object's location.
The test for reviewing the denial of a motion for judgment of acquittal is "whether the jury, as trier of fact, might reasonably conclude that the evidence excluded every reasonable hypothesis but that of guilt." Lowery v. State, 450 So.2d 587, 588 (Fla. 1st DCA 1984). Appellant argues that the evidence failed to exclude a reasonable hypothesis of innocence; that he touched the manila envelope at a business, friend's house or in a pile of mail, as examples, before it contained cocaine, or at a later time, without knowledge of its illegal contents.
The evidence against appellant consists of the following: Appellant's fingerprint on the manila envelope; Caldwell's testimony that he made two payments totaling $4,400 to appellant within three months of the cocaine's discovery; and Caldwell's testimony that he telephoned appellant at least once within approximately one month of the cocaine's discovery. If appellant's fingerprint on the manila envelope had been the only evidence presented by the state to prove identity, then the state would have been required to prove that appellant's fingerprint could have been made only at the time the crime was committed. Jaramillo v. State, 417 So.2d 257 (Fla. 1982); Williams v. State, 308 So.2d 595 (Fla. 1st DCA 1975). The state did not prove when appellant's fingerprint was made, but the other evidence mentioned above eliminated the need for such proof. The crucial question, however, concerns the sufficiency of the state's evidence as to the other elements of the crime charged, trafficking in cocaine. Section 893.135(1)(b), Florida Statutes, and the instant information, required the state to prove that appellant "knowingly" sold, or was "knowingly in actual or constructive possession of, 28 grams or more of cocaine". Use of the work "knowingly" in the trafficking statute required the state to prove the elements of intent and knowledge. State v. Ryan, 413 So.2d 411 (Fla. 4th DCA 1982).
The only evidence possibly relating to an intent to sell cocaine consisted of the payments made by Caldwell to appellant. The state, however, never proved what those payments were for, and a trier of fact could have reasonably believed Caldwell's testimony that the payments were loan repayments. As to appellant's knowing constructive possession, the only evidence was appellant's fingerprint on the manila envelope. To prove constructive possession the burden was on the state to show that the appellant knew of the presence of cocaine in the manila envelope and had the ability to maintain control thereof. Wale v. State, 397 So.2d 738, 739 (Fla. 4th DCA 1981). In the case of exclusive possession by the defendant, these elements may be inferred, otherwise they must be proved by affirmative evidence. Brown v. State, 428 So.2d 250 (Fla. 1983); Arant v. State, 256 So.2d 515, 516 (Fla. 1st DCA 1972).
In Arant, defendant was charged with possession of marijuana. During a search of a female companion's home, police found a single fingerprint of defendant on a potato chip can, which contained a marijuana *65 plant. The state also proved that defendant frequently visited the woman's apartment. This court reversed the conviction, stating:
The fingerprint proves quite conclusively that appellant touched the can. It tells us nothing about when... . Obviously the trier of fact thought it probable that the print was made after the plant's presence in the can was manifest. But guilt cannot rest on mere probabilities. It is no less probable that the print was made before the plant was put in the can or perhaps while it contained a seed not yet visible. The State's hypothesis that the print proves possession, even if we held it consistent with guilt, is no less consistent with innocence... .
* * * * * *
[T]he use of fingerprints proves only that appellant touched the can. Whether on the subject premises or elsewhere, it does not tell. It is only proof of the identity of the person who touched the can. It was in no way declaratory of his knowledge that the contents of the can were contraband and was in no way declaratory of that degree of control or dominion over the contraband which would show possession within the meaning of the statute.
256 So.2d at 516-17.
The state's proof in the instant case suffers from the same defects. The manila envelope had been handled by the postal service, the sender and the receiver when mailed in 1982. There was no proof that the manila envelope was sent or received by appellant, nor was it addressed to appellant. The manila envelope had four other prints which could not be identified, nor was the state able to prove when appellant touched it. Also, there was no evidence linking appellant with the Federal Express mailing envelope or with the two plastic bags, which had nine unidentified fingerprints. Therefore, the manila envelope was not in the exclusive possession of appellant, and there was no affirmative evidence proving his knowledge of the cocaine's presence and his ability to maintain control of it.
Under these circumstances, we agree with appellant that a reasonable hypothesis of innocence is that he touched the manila envelope before it contained cocaine, or later without knowing that it contained cocaine. The state's evidence does not support a conclusion by the jury, as trier of fact, that the evidence excluded every reasonable hypothesis but that of guilt. Accordingly, we reverse appellant's conviction, since he was entitled to a judgment of acquittal. In view of this decision, we need not reach appellant's remaining point on appeal.
MILLS and ZEHMER, JJ., concur.
NOTES
[1] Because the opening of the envelope by the courier was not at the government's direction, it obviously cannot be considered an illegal search and seizure. United States v. Jacobsen, ___ U.S. ___, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984).